1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   JAMES V. HART, State Bar No. 278763
    Supervising Deputy Attorney General
3   DAVID C. GOODWIN, State Bar No. 283322
    PETER F. NASCENZI, State Bar No. 311664
4   Deputy Attorneys General
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone:  (916) 210-7805
      Fax:  (916) 327-2319
7     E-mail:  Peter.Nascenzi@doj.ca.gov
    Attorneys for Plaintiff State of California

8
                    IN THE UNITED STATES DISTRICT COURT
9
                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10
                              SACRAMENTO DIVISION
11

12

13   **STATE OF CALIFORNIA, ex rel. ROB**
     **BONTA, in his official capacity as Attorney**
14   **General of the State of California,**

15                                    Plaintiff,     **COMPLAINT FOR DAMAGES, CIVIL**
                                                     **PENALTIES, AND DECLARATORY**
16            **v.**                                 **AND INJUNCTIVE RELIEF**

17
     **AZUMA CORPORATION; PHILLIP DEL ROSA,**
18   **in his personal capacity and official capacity**
     **as Chairman of the Alturas Indian**
19   **Rancheria; DARREN ROSE, in his personal**
     **capacity and official capacity as Vice-**
20   **chairman of the Alturas Indian Rancheria;**
     **and WENDY DEL ROSA, in her official**
21   **capacity as Secretary–Treasurer of the**
     **Alturas Indian Rancheria,**
22
                                    Defendants.
23

24

25

26

27

28

COMES NOW the Plaintiff, the State of California, by and through its Attorney General, Rob Bonta, and for its claims against the Defendants, states and alleges as follows:

## JURISDICTION

1.  This is an action for declaratory relief against a tribal entity, declaratory and injunctive relief under the *Ex parte Young* doctrine as against officers of a tribe and of a tribal entity in their official capacities, and for civil damages and penalties as against such entity and officers in their personal capacities arising from their years of knowing and intentional trafficking of contraband cigarettes in the State of California. *See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 514 (1991).

2.  This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 378(a); 18 U.S.C. § 2346(b); and 18 U.S.C. § 1964(c).

3.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law, including the Prevent All Cigarette Trafficking Act of 2009 ("PACT Act"), 15 U.S.C. §§ 375–378; the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. §§ 2341–2346; and the Civil Racketeer Influenced and Corrupt Organization Act ("Civil RICO"), 18 U.S.C. §§ 1961–1968.

4.  This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy, and share all common operative facts and parties with the federal law claims. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

5.  This Court has jurisdiction to grant the declaratory and injunctive relief requested in this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

6.  Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because the majority of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b).

## PARTIES

7.  Plaintiff is the State of California, by and through its Attorney General, Rob Bonta.

1

8.     Defendant Azuma Corporation ("Azuma") is a tribally chartered corporation wholly owned by the Alturas Indian Rancheria (the "Alturas Tribe"), a federally recognized Indian tribe of Achumawi Indians located in Modoc County, California. *See* U.S. Bureau of Indian Affairs, Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 88 Fed. Reg. 2112, 7554 (Jan. 12, 2023). Azuma possesses a federal manufacturer's permit issued by the U.S. Tobacco Tax and Trade Bureau ("TTB") and distributes cigarettes from its facility in Modoc County, California.

9.     Defendant Phillip Del Rosa is a member and chairperson of the Alturas Tribe. He is named in this action in his official and personal capacities.

10.    Defendant Darren Rose is a member, former chairperson, and current vice-chairperson of the Alturas Tribe and an officer and/or board member of Azuma. He is named in this action in his official and personal capacities.

11.    Defendant Wendy Del Rosa is a member and current secretary–treasurer of the Alturas Tribe. She is named in this action in her official capacity.

## GENERAL ALLEGATIONS

### I.    CALIFORNIA CIGARETTE TAXES

12.    Since 1959, California has imposed excise taxes on the distribution of cigarettes. The rate has increased over time, and is currently $2.87 per pack of 20 cigarettes. *See* Cal. Rev. & Tax. Code §§ 30101, 30123(a), 30131.2(a), 30130.51(a). The tax attaches to the first taxable use, sale, or consumption of cigarettes. *See id.* § 30008. Where the distributor of the cigarettes cannot be taxed, the tax is "paid by the user or consumer," *id.* § 30107, and it is collected by a distributor "at the time of making the sale or accepting the order," *id.* § 30108(a). The tax is generally collected through the use of valued tax stamps, which are purchased by a licensed distributor and affixed to the cigarette packages at or near the time of sale. *See id.* § 30163.

13.    The California cigarette tax scheme recognizes that certain purchasers may not be taxable at the time of sale and requires distributors to collect taxes only after they become due. Cal. Rev. & Tax. Code § 30108(a) (providing "if the purchaser is not then obligated to pay the tax," the distributor must collect the tax "at the time the purchaser becomes so obligated").

14. For sales made on Indian land, "the legal incidence of California's cigarette tax falls on non-Indian consumers of cigarettes purchased" on the reservation, and California "has the right to require [the Tribe] to collect the tax on [the State's] behalf." *Cal. State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 12 (1985) (per curiam).

15. To ensure the collection of tax on all cigarettes sold to non-exempt consumers and to prevent fraudulent transactions to flout such taxes, California has established a comprehensive statutory scheme of licensing and stamping. This scheme consists of the Cigarette and Tobacco Products Licensing Act of 2003 (the "Licensing Act"), Cal. Bus. & Prof. Code §§ 22970–22991, and the Cigarette and Tobacco Products Tax Law (the "Cigarette Tax Law"), Cal. Rev. & Tax. Code §§ 30001–30483.

16. Like its tax laws, California's licensing and stamping laws are properly applied to tribes and tribal entities when they sell cigarettes to non-members or go beyond their own borders. Off reservation, such entities are subject to California's licensing and stamping laws as those laws are "non-discriminatory state laws of general application." *Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 729 (9th Cir. 2021), *cert. denied*, 143 S. Ct. 1110 (2022). And on reservation, states may impose "minimal burden[s] designed to avoid the likelihood that in [their] absence non-Indians purchasing from the tribal seller will avoid payment of a concededly lawful tax." *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 483 (1976). The Ninth Circuit has expressly found California's licensing and stamping laws to constitute such "minimal burdens." *See Big Sandy*, 1 F.4th at 731–32.

## II.    CALIFORNIA CIGARETTE REGULATIONS

17. "It is the policy of the state that financial burdens imposed on the state by cigarette smoking be borne by tobacco product manufacturers rather than by the state to the extent that those manufacturers either determine to enter into a settlement with the state or are found culpable by the courts." Cal. Health & Safety Code § 104555(d). Thus, in addition to the consumer-paid taxes collected on the distribution of cigarettes, the State also receives compensation from cigarette manufacturers.

///

18.    As a result of the tobacco Master Settlement Agreement ("MSA"),[1] the State receives annual payments from signatory manufacturers to that Agreement, called "Participating Manufacturers," in perpetuity. *See* MSA § IX(c).

19.    Other cigarette manufacturers that have not signed the MSA, called "Non-Participating Manufacturers," do not make annual payments, but are required to escrow monies against a potential future recovery by the State pursuant to the Escrow Statute. *See* Cal. Health & Safety Code § 104557(a)(2).

20.    The two charges—MSA payments by Participating Manufacturers and escrow fees by Non-Participating Manufacturers—are not identical and are calculated differently, although they are roughly equal on a per-cigarette basis. Participating Manufacturers' MSA payments are determined nationally based on federal excise collections, *see* MSA §§ II(z), IX(c), regardless of whether state excise tax later applies. Non-Participating Manufacturers' escrow fees, in contrast, are assessed at the state level, and do not attach to cigarettes beyond the reach of state taxation, including "cigarettes . . . sold by a Native American tribe to a member of that tribe on that tribe's land." Cal. Health & Safety Code § 104556(j).

21.    Because MSA payments and escrow fees are assessed against manufacturers and collected months after the underlying distributions, there is no "pass on and collect" obligation for MSA payments or escrow fees under State law. Manufacturers making the payments would logically seek to recoup these amounts from their customers, but manufacturers evading their payment obligations would not, allowing them to derive illicit cost advantages over their compliant rivals.

22.    The Directory Statute was enacted to close the door to such scofflaw manufacturers. Under the Complementary Statute, manufacturers are required to provide various assurances to the Attorney General's office that they will meet their obligations under the Reserve Fund Statute. *See* Cal. Rev. & Tax. Code § 30165.1(b). Manufacturers that provide such assurances are placed

---

[1] The tobacco Master Settlement Agreement is a "landmark agreement" reached in 1998 between cigarette manufacturers and 52 states and territories *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 533 (2001). The text of the MSA can be found at https://oag.ca.gov/sites/all/files /agweb/pdfs/tobacco/1msa.pdf.

on the "Tobacco Directory" and their cigarettes may be sold to consumers in the State. *Id.*
§ 30165.1(c). The Attorney General posts the Tobacco Directory on his official, public website.
*Id.*

23.    A manufacturer's failure to meet its obligations or provide adequate assurances that it
will do so renders its cigarettes contraband, unlawful for sale to consumers, and forfeitable to the
State. Cal. Rev. & Tax. Code § 30436(e).

## DEFENDANTS' CONTRABAND CIGARETTE TRAFFICKING ENTERPRISE

24.    Defendants' cigarette enterprise has one primary purpose: unlawfully selling
contraband cigarettes free of California taxes and other California tobacco regulations. To do so,
Defendants have abused their positions of power within the Alturas Tribe and Azuma. California
has exhausted the federal regulatory mechanisms Congress enacted specifically for states to
combat the kind of trafficking Defendants conduct, but Defendants' enterprise continues to exist
and achieve its core purpose of evading State taxes and other cigarette laws, necessitating this
lawsuit.

## I.    DEFENDANT DARREN ROSE ESTABLISHES UNLAWFUL TOBACCO SHOPS

25.    Defendant Darren Rose, having no previous connection to the fewer-than-ten-member
Alturas Tribe, was adopted into the Tribe in 2003. Rose had earlier obtained interests in two
Indian allotments—the Benter Allotment and Henry Wallace Allotment—and was introduced to
the Alturas Tribe by in order to leverage the Alturas Tribe's sovereignty to exploit that interest.
Though on Indian country as defined under federal law, each of these allotments is more than 150
miles from the Alturas Indian Rancheria, and the Alturas Tribe holds no jurisdiction or other
ownership interest in either allotment.

26.    Rose's schemes to exploit the Alturas Tribe's sovereignty and his interests in the
allotments have been illegal and based on avoiding lawful taxes and regulations.

27.    Rose first attempted to build and develop a second casino for the Tribe on one of his
allotments. But because the allotment was the land of the Karuk Tribe, the Alturas Tribe had no
authority to open a casino on it. Accordingly, the Bureau of Indian Affairs refused to approve the
new casino.

28.     In 2009, Rose turned to retail sales of contraband cigarettes. Sourcing cigarettes from unlicensed manufacturers located outside of California, Rose set up two tobacco shops on his allotments: Burning Arrow I, located at 900 Running Bear Road, Yreka, California; and Burning Arrow II, located on Baker Ridge Road, near 10838 Rainbow Lake Road, Ono, California. These were located on the Benter Allotment and Henry Wallace Allotment, respectively.

29.     Rose's cigarette sales from those two smoke shops violated the California cigarette regulations identified in ¶¶ 12–23, *supra*. The two shops were unlicensed; sourced cigarettes from unlicensed manufacturers and distributors; sold off-directory cigarettes; and failed to collect and remit any excise tax to the state.

30.     In February 2009, May 2010, and November 2011, the Bureau of Indian Affairs sent cease and desist letters to Rose, demanding he stop selling tax-free cigarettes and informing him that he had a legal duty to collect and remit California excise taxes for his sales. True and correct copies of these letters are attached as exhibits A, B, and C.

31.     In December 2012, the California Attorney General's Office ("OAG") sent a cease and desist letter to Rose, notifying him that his cigarette sales were unlawful. A true and correct copy of this letter is attached as exhibit D.

32.     Rose nevertheless continued his unlawful cigarette sales.

33.     In February 2013, OAG filed suit against Rose, alleging each of the sales violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210. The court found that Rose committed at least 51,000 violations of the Unfair Competition Law for unlawfully selling over 51,000 cartons of cigarettes, imposed $765,000 in civil penalties, and permanently enjoined Rose from selling cigarettes except to members of the Alturas Tribe on the Alturas Tribe's land. *See* ex. E, Statement of Decision 14–16, *People ex rel. Becerra v. Rose*, Case No. 176689 (Shasta Cnty. Super. Ct. Aug. 28, 2015); *People ex rel. Becerra v. Rose*, 16 Cal. App. 5th 317, 323–24, 332 (2017) (affirming trial court judgment).

///

///

///

II.  **ROSE AND PHILLIP DEL ROSA USE AZUMA TO CREATE A VERTICALLY INTEGRATED CONTRABAND CIGARETTE ENTERPRISE THAT DISTRIBUTES OF CONTRABAND CIGARETTES THROUGHOUT CALIFORNIA**

34.  In the wake of the suit against his retail tobacco shops, Rose attempted a new unlawful business: a marijuana grow facility. Prior to establishing the facility, the United States Attorney's Office for the Eastern District of California informed Rose and the Alturas Tribe that their plans would violate federal law. Rose and the Alturas Tribe nevertheless went ahead with them. But on July 8, 2015, officers from the Bureau of Indian Affairs, the Drug Enforcement Administration, and other agencies executed a search warrant on the facility, seizing 12,000 illegal marijuana plants.

35.  After the failure of his marijuana operation, Rose once more turned to cigarettes, this time expanding beyond retail to importing, manufacturing, and distributing, becoming the primary source for contraband cigarettes in response to OAG's efforts to remove such cigarettes from the California market.

A.  **SMC "Exits" the California Cigarette Market**

36.  Non-party Seneca Manufacturing Company ("SMC") is a tribally chartered, privately owned corporation. SMC manufactures cigarettes under a federal manufacturer's permit issued by TTB and distributes cigarettes from its manufacturing facility in Cattaraugus County, New York. It manufactures cigarettes under the brands Heron and Sands.

37.  Neither the Heron nor Sands brands are listed on the California Cigarette Directory, making them contraband in the State of California. *See* Cal. Rev. & Tax. Code § 30436(b), (e).

38.  In 2014, OAG obtained invoices indicating distributions of SMC-brand cigarettes in California without corroborating reports mandated by the PACT Act.[2] In response to inquiries from OAG, SMC represented that SMC did not itself send any SMC cigarettes to California, but instead that a tribal distributor picked up cigarettes at the SMC factory dock and that the subsequent California distributions were made by that tribal distributor.

///

---

[2] As explained in ¶ 53, the PACT Act requires those shipping cigarettes in interstate commerce or through Indian country to file reports of such shipments with the "tobacco tax administrator of the State into which such shipment is made." 15 U.S.C. § 376(a)(2).

39.     To resolve the issue of contraband SMC cigarettes entering California, SMC provided by letter dated October 10, 2014, written confirmation that "Seneca Manufacturing Company is not shipping cigarettes into California and does not plan to ship cigarettes into California in the future." A true and correct copy of this letter is attached as exhibit F. SMC also later agreed in writing by letter dated June 17, 2016, that "[i]f Seneca Manufacturing Company or any successor in interest ever becomes aware that anyone is selling Seneca Manufacturing Company cigarettes or roll-your-own tobacco anywhere within California's exterior boundaries or within Indian Country in California," it would "[p]rovide written notice to the . . . Office of the Attorney General." A true and correct copy of this letter is attached as exhibit G.

**B.     Azuma Back-fills SMC's "Exit" from California**

40.     With SMC ceasing its California sales, Defendants devised their own scheme to bring off-directory cigarettes into California and manufacture their own. Expanding beyond Rose's previous retailing of contraband cigarettes, Defendants used Azuma to establish a vertically integrated contraband cigarette operation, importing, manufacturing, distributing, and retailing contraband cigarettes throughout California.

41.     Defendants Rose and Phillip Del Rosa obtained a federal TTB tobacco manufacturer's permit for Azuma, license number TP CA-15012.

42.     After OAG received information regarding brands registered to SMC being distributed by Azuma in California in 2018, Azuma represented that it entered into an April 2018 agreement with SMC under which SMC manufactured cigarettes under the Sands and Heron brands in New York, affixing Azuma's TTB license number in order to claim such cigarettes as "manufactured" by Azuma, and transferring such cigarettes "in bond" to Azuma's facilities in California.

43.     Azuma claimed in a letter dated September 14, 2018, that a definitions section of the Code of Federal Regulations and a definitions section of the U.S. Code rendered such cigarettes "not subject to state regulation and taxes." A true and correct copy of this letter is attached as exhibit H.

///

8

44.     The Heron and Sands brands are not listed on the California Cigarette Directory, as neither Azuma nor SMC have made the necessary assurances that it will meet is escrow obligations. Heron and Sands cigarettes are accordingly contraband. *See* Cal. Rev. & Tax. Code § 30436(b), (e).

45.     SMC also manufactured Azuma-owned brands on behalf of Azuma. Azuma owns the Tracker and Tucson cigarette brand trademarks. The Tracker and Tucson brands are not listed on the California Cigarette Directory, as neither Azuma nor SMC have made the necessary assurances that it will meet is escrow obligations. *See* Cal. Rev. & Tax. Code § 30436(b), (e).

46.     SMC no longer manufactures cigarettes on behalf of Azuma after a final shipment in December 2022. That final shipment contained about 10 million SMC-branded cigarettes, alone sufficient to meet Azuma's current reported distribution volume for about six months.

47.     Azuma currently manufactures cigarettes under its owned brands, Tracker and Tucson.

**C.     Azuma Takes on Distribution and Reopens Rose's Retail Business**

48.     Filing the gap in the supply of contraband cigarettes in California, Defendants have also unlawfully converted Azuma into a distributor of contraband cigarettes throughout California. Moreover, the previously shuttered smokeshop on the Benter Allotment that Defendant Rose was enjoined from operating has been reopened, selling contraband cigarettes Azuma imported into California. Thus, Defendants have created a vertically integrated contraband cigarette operation, encompassing manufacturing, distribution, and retail.

49.     Azuma supplies contraband cigarettes directly to retail smokeshops on Indian land. Azuma has also supplied contraband cigarettes to such smokeshops indirectly through unlicensed distributors operating within the State.

50.     Though Azuma has access to ten-wheel trucks, Defendants acquired a single rear axle box truck to conduct its distribution business. Aware that California regularly inspects larger trucks at agricultural stations and truck scales, Defendants opted to use a simple box truck to avoid such inspections.

///

9

51.     Defendants' box truck also operates without a federal Department of Transportation ("DOT") number. On at least one occasion, California Highway Patrol has pulled over the truck and advised the driver to obtain a DOT number.

52.     Defendants also use personal cars to transport smaller numbers of cases to retail smokeshops, also to avoid inspection or detection.

**D.     Azuma Continues Distributing Contraband Cigarettes Despite Listing on the PACT Act Non-Compliant List**

53.     To help states combat contraband cigarette trafficking, Congress passed the Prevent All Cigarette Trafficking Act of 2009 ("PACT Act"), 15 U.S.C. §§ 375–378, 18 U.S.C. §§ 1716E, 2343. The PACT Act requires those shipping cigarettes in interstate commerce or through Indian country to file reports of such shipments with the "tobacco tax administrator of the State into which such shipment is made." 15 U.S.C. § 376(a)(2). It also federalizes "all State, local, tribal, and other laws applicable to the sales of cigarettes" for all delivery sales of cigarettes, treating delivery sales into a state "as if the delivery sales occurred entirely within the . . . State." *Id.* § 376a(a).

54.     Azuma has claimed non-existent exemptions the PACT Act—both to its reporting requirements and to the state law as federalized by the Act. *See* ¶ 43; *Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 729 (9th Cir. 2021) ("We . . . treat[] tribe-to-tribe sales made outside the tribal enterprise's reservation as 'off reservation' activity subject to non-discriminatory state laws of general application."). Azuma has accordingly failed to file all the reports required by the Act for its cigarette shipments, *see* 15 U.S.C. § 376(a), and has not complied with the state laws incorporated by the Act, *see id.* § 376a(a).

55.     As a result of Azuma's non-compliance with the PACT Act, OAG nominated Azuma to the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for the so-called PACT Act non-compliant list on December 18, 2018. *See* 15 U.S.C. § 376a(e)(1). Outside of limited statutory exceptions, the PACT Act prohibits anyone from knowingly distributing cigarettes on behalf on those listed. *See id.* § 376a(e)(2). ATF placed Azuma on the list on April

///

10, 2019. A true and correct copy of ATF's listing notice to Azuma dated February 28, 2019, is attached as exhibit I.

56.     On September 30, 2019, Azuma claimed that it did not receive any notice from ATF of its nomination for the list, despite Federal Express confirming delivery to Azuma's physical address, complete with signature of a tribal employee. Though the PACT Act only requires that ATF "make a reasonable attempt to send notice to the [nominated] seller by letter, electronic mail, or other means," 15 U.S.C. § 376a(e)(1)(E)(ii); *see also id.* § 376a(e)(8), ATF nonetheless removed Azuma from the non-compliant list due to the purported defect on October 11, 2019. ATF provided Azuma with opportunity to respond to the nomination by November 1, 2019. Azuma filed an objection on that date, making legal arguments against its listing. ATF rejected those arguments and placed Azuma on the list once again effective December 1, 2019. A true and correct copy of ATF's listing notice to Azuma dated November 12, 2019, is attached as exhibit J.

57.     Through counsel, Azuma provided another response to ATF by letter dated February 7, 2020. A true and correct copy of this letter is attached as exhibit H. Rather than substantively comply with state law as incorporated into federal law by the PACT Act, Azuma proposed a scheme to insert an intermediary into its distributions in an attempt to excuse itself from PACT Act requirements. *See* ex. K, Letter from Ben Fenner, Attorney for Azuma Corp. to Joel J. Roessner, Chief Counsel, ATF (Feb. 7, 202) 2. The scheme would have merely substituted one subdivision of one of Azuma's in-state customers for another. *See id.* (proposing transferring cigarettes to Big Sandy Rancheria Importing, IRA, who would then transfer them to Big Sandy Rancheria Distributing, IRA, instead of transferring them directly to Big Sandy Rancheria Distributing, IRA).

58.     ATF rejected the arguments Azuma made in its letter of February 7, 2020, and the company remains on the non-compliant list.

59.     In a letter to ATF dated April 10, 2023, Azuma reiterated its previously rejected arguments. In that letter, Azuma admitted that its tribal customers held no licenses and sold to non-members of their respective tribes without collecting or remitting California excise tax or

///

otherwise complying with the state laws identified above. A true and correct copy of this letter is attached as exhibit L.

60.    OAG sent a warning letter to Azuma, care of Phillip Del Rosa and Darren Rose, dated October 26, 2022. That letter alerted Azuma of its violations of law and demanded that it cease its unlawful cigarette distributions and sales. A true and correct copy of this letter is attached as exhibit M.

61.    Despite the warning letter, Azuma continues its unlawful activities.

**III.    DEFENDANTS ROSE AND PHILLIP DEL ROSA CONTROL THE ALTURAS TRIBE AND AZUMA AND THUS THE ENTERPRISE'S CONTRABAND CIGARETTE TRAFFICKING**

62.    Rose's foray into contraband cigarettes originally was roiled by a leadership dispute within the Tribe, with Rose and Defendant Phillip Del Rosa on opposite sides. *See Alturas Indian Reservation*, 54 I.B.I.A. 1, 1–2 (Aug. 5, 2011). Subsequent leadership disputes have placed Rose and Phillip Del Rosa on the same side when Phillip Del Rosa became a supporter of and active participant in Azuma's contraband cigarette trafficking activities. *See Alturas Indian Reservation*, 64 I.B.I.A. 236, 238 (Jun. 30, 2017) ("The Tribe has been embroiled in membership and leadership disputes for many years, although the make-up of the factions has changed.").

63.    The Alturas Tribe has both a General Council and a Business Committee. The General Council "effectively consists of all voting members of the Tribe." *Alturas Indian Reservation*, 54 I.B.I.A. at 4. The Business Committee "consists of the Tribe's three elected officials (a Chairman, Vice-Chairman, and Secretary–Treasurer)." *Id.*

64.    Under the Tribe's constitution, the Business Committee has "the authority to promulgate 'all ordinances, resolutions, or other enactments of the [Tribe],' and to represent the Tribe 'in all negotiations between the [T]ribe and local, state, and federal governments, and other tribes.'" *Alturas Indian Reservation*, 54 I.B.I.A. at 4. It also has "the authority '[t]o administer all lands and assets and manage all economic affairs and enterprises of the [Tribe].'" *Id.*

65.    Defendants Rose and Phillip Del Rosa, holding two of the three seats on the Business Committee, control the Business Committee and have authority to govern all aspects of the Alturas Tribe and its subdivisions and arms.

1    66.    Defendant Rose, in turn, exercises control over Azuma's operations. For example,

2    OAG has obtained copies of invoices of cigarette shipments both to and from Azuma, and Rose is

3    invariably listed as the contact for Azuma. *See, e.g.*, ex. N, Bill of Lading from Azuma Corp. to

4    Big Sandy Rancheria (Sept. 10, 2018).

5

6                          **FIRST CLAIM FOR RELIEF**

7            **Violations of 15 U.S.C. §§ 376–376a – PACT Act**

                          **Against all Defendants**

8

9    67.    The State of California realleges all paragraphs set forth above and incorporates them

10    by reference.

11    68.    Defendants are "delivery sellers" as defined under the PACT Act. *See* 15 U.S.C.

12    § 375(6).

13    69.    Each and every unlicensed customer of Defendants located outside of the Alturas

14    Rancheria is a "consumer" as defined under the PACT Act. *See* 15 U.S.C. § 375(4).

15    70.    The shipments of cigarettes from Defendants to customers outside of the Alturas

16    Rancheria are "delivery sales" as defined under the PACT Act. *See* 15 U.S.C. § 375(5). They also

17    are made in "interstate commerce" as defined under the PACT Act. *See id.* § 375(10).

18    71.    Since at least 2018 and continuing to the present, Defendants have not filed all the

19    reports required by the PACT Act for their cigarette shipments made in interstate commerce. *See*

20    15 U.S.C. § 376(a).

21    72.    The delivery sales made by Defendants since at least 2018 and continuing to the

22    present do not comply with the shipping requirements, recordkeeping requirements, or tax

23    collection requirements of the PACT Act. *See* 15 U.S.C. § 376a(b), (c), (d).

24    73.    The delivery sales made by Defendants since at least 2018 and continuing to the

25    present do not comply with the state laws applicable to such sales as incorporated into federal and

26    required by the PACT Act. *See* 15 U.S.C. § 376a(a)(3). Namely:

27             a.    Defendants do not pay or collect and remit California excise taxes or

28                 otherwise comply with California tobacco tax law for their off-reservation

1    sales and sales to nonmembers of the Alturas Tribe, *see* Cigarette and

2    Tobacco Products Tax Law, Cal. Rev. & Tax. Code §§ 30001–30483;

3        b.  Defendants are not properly licensed by the State of California for their off-

4    reservation sales, *see* Tobacco Products Licensing Act of 2003, Cal. Bus. &

5    Prof. Code §§ 22970–22991;

6        c.  Defendants sell, offer, possess for sale in California, ship, and/or or

7    otherwise distribute into or within California cigarettes not found on the

8    California cigarette directory, *see* Cal. Rev. & Tax. Code § 30165.1(e)(2);

9    and

10       d.  Defendants sell, distribute, acquire, hold, own possess, transport, import,

11   and/or cause to be imported cigarettes not found on the California cigarette

12   directory that Defendants know or should know are intended to be

13   distributed into or within California, *see* Cal. Rev. & Tax. Code

14   § 30165.1(e)(3).

15   74.   The Attorney General of California is empowered to enforce the PACT Act. *See*

16   15 U.S.C. § 378(c).

17   75.   Defendants have knowingly completed, caused to be completed, or completed their

18   portion of deliveries of cigarettes from Azuma, who is named on the non-compliant list, in

19   violation of the PACT Act. *See* 15 U.S.C. § 376a(e)(2).

20   76.   As a direct result of Defendants' violations of the PACT Act, the State of California

21   has suffered and will continue to suffer damages.

22   77.   Unless enjoined, Defendants will continue to make delivery sales and cigarette

23   shipments without complying with the PACT Act.

24

25   **SECOND CLAIM FOR RELIEF**
**Violations of 18 U.S.C. § 2342 – CCTA**

26   **Against all Defendants**

27   78.   The State of California realleges all paragraphs set forth above and incorporates them

28   by reference.

79.   Since at least 2018 and continuing to the present, Defendants knowingly sold, purchased, shipped, transported, received, possessed, and distributed contraband cigarettes within the meaning of 18 U.S.C. § 2341(2), in violation of 18 U.S.C. § 2342(a). Namely, each engaged in the above activities in the State of California with more than 10,000 cigarettes that did not bear the required State of California tax stamp. *See* Cal. Rev. & Tax. Code § 30163.

80.   Pursuant to 18 U.S.C. § 2346(b), California is empowered to bring an action in federal district court to prevent and restrain violations of the CCTA, and to obtain any other appropriate forms of relief from such violations, including civil penalties, disgorgement, and damages.

81.   As a result of the foregoing violations of the CCTA, California has suffered damages in the amount of $2.87 for each pack of 20 cigarettes unlawfully trafficked.

82.   Defendants will continue to violate the CCTA unless enjoined.

### THIRD CLAIM FOR RELIEF
### Violations of 18 U.S.C. § 1962(c) – Civil RICO
### Against Defendants Rose and Phillip Del Rosa

83.   The State of California realleges all paragraphs set forth above and incorporates them by reference.

84.   The State of California is a "person" as defined in 18 U.S.C. § 1961(3).

85.   Defendant Azuma is an "enterprise" as defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. § 1962(c) and who engages in and whose activities affect interstate commerce.

86.   Since at least 2018 and continuing to the present, Defendants Rose and Phillip Del Rosa have conducted and participated in the Azuma enterprise through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). Specifically, Defendants Rose and Phillip Del Rosa engaged in multiple and repeated acts of cigarette trafficking in violation of the CCTA, 18 U.S.C. §§ 2341–2346, through the Azuma enterprise. *See* 18 U.S.C. § 1961(1). The acts of trafficking made through the Azuma enterprise are both related and continuous, using the enterprise to accomplish the uniform purpose of profiting from the repeated and ongoing sale of contraband cigarettes in California.

87.     As a direct and proximate result of the foregoing racketeering activity and violations of 18 U.S.C. § 1962(c), California has suffered damages in the amount of $2.87 for each pack of 20 cigarettes unlawfully trafficked, which constitutes and injury to its business or property within the meaning of 18 U.S.C. § 1964(c).

## FOURTH CLAIM FOR RELIEF
### Violations of Cal. Rev. & Tax. Code § 30165.1 – Directory Statute
### Against all Defendants

88.     The State of California realleges all paragraphs set forth above and incorporates them by reference.

89.     Since at least 2018 and continuing to the present, Defendants have sold, offered, possessed for sale in California, shipped and/or otherwise distributed into or within California cigarettes not listed on the California tobacco directory in violation of California Revenue and Taxation Code section 30165.1(e)(2).

90.     Since at least 2018 and continuing to the present, Defendants have sold, distributed, acquired, held, possessed, transported, imported, and/or caused to be imported cigarettes not listed on the California tobacco directory that Defendants knew or should have known were intended to be distributed in California in violation of California Revenue and Taxation Code section 30165.1(e)(3).

## FIFTH CLAIM FOR RELIEF
### Violations of Cal. Health & Safety Code § 104557 – Escrow Statute
### Against all Defendants

91.     The State of California realleges all paragraphs set forth above and incorporates them by reference.

92.     Defendant Azuma is a tobacco product manufacturer as defined in California Health and Safety Code section 104556(i).

93.     Since at least 2018 and continuing to the present, Defendants have failed to comply with the Escrow Statute. Namely, Defendant Azuma has not become a participating manufacturer and generally performed the attendant financial obligations under the Master Settlement

1   Agreement, nor placed sufficient funds into escrow pursuant to California Health and Safety

2   Code section 104557(a).

3

4                              **PRAYER FOR RELIEF**

5        The State of California prays for:

6        1.      Preliminary and permanent injunctive relief, enjoining Defendants Azuma

7   Corporation and Darren Rose, Phillip Del Rosa, and Wendy Del Rosa in their official capacities,

8   their successors, employees, agents, representative, and other persons acting in concert with them:

9            a.   To file the reports required by the PACT Act for their cigarette shipments

10                made in interstate commerce, *see* 15 U.S.C. § 376(a);

11           b.   To comply with the shipping requirements, recordkeeping requirements, or

12                tax collection requirements of the PACT Act for their delivery sales, *see*

13                15 U.S.C. § 376a(b), (c), (d);

14           c.   To comply with the state laws applicable to delivery sales as incorporated

15                into federal law by the PACT Act, *see* 15 U.S.C. § 376a(a)(3), namely, the

16                Cigarette and Tobacco Products Tax Law, Cal. Rev. & Tax. Code §§ 30001–

17                30483, the Tobacco Products Licensing Act of 2003, Cal. Bus. & Prof. Code

18                §§ 22970–22991, and the Directory Statute, Cal. Rev. & Tax. Code

19                § 30165.1;

20           d.   From knowingly completing, causing to be completed, or completing their

21                portion of deliveries of cigarettes from Azuma, who is named on the non-

22                compliant list, in violation of the PACT Act, *see* 15 U.S.C. § 376a(e)(2);

23           e.   From selling, purchasing, shipping, transporting, receiving, possessing, and

24                distributing contraband cigarettes in violation of the CCTA, *see* 18 U.S.C.

25                § 2342(a);

26           f.   From selling, offering, possessing for sale in California, shipping and

27                otherwise distributing into or within California cigarettes not listed on the

28   ///

California tobacco directory in violation of the Directory Statute, *see* Cal.

Rev. & Tax. Code § 30165.1(e)(2);

    g.  From selling, distributing, acquiring, holding, possessing, transporting, importing, and causing to be imported cigarettes not listed on the California tobacco directory that Defendants know or should know are intended to be distributed in California in violation of the Directory Statute, *see* Cal. Rev. & Tax. Code § 30165.1(e)(3); and

    h.  To place funds into escrow for each unit sold by Defendant Azuma in California in accordance with the Escrow Statute, *see* Cal. Health & Safety Code § 104557(c);

2.    A declaration that Defendants Azuma Corporation and Darren Rose, Phillip Del Rosa, and Wendy Del Rosa in their official capacities:

    a.  Must file the reports described in the PACT Act for their sales made off the Alturas Rancheria, *see* 15 U.S.C. § 376(a);

    b.  Must comply with the shipping requirements, recordkeeping requirements, or tax collection requirements of the PACT Act for their delivery sales made off the Alturas Rancheria, *see* 15 U.S.C. § 376a(b), (c), (d);

    c.  Must comply with the state laws applicable to delivery sales both as a matter of state law and as incorporated into federal law by the PACT Act for their sales made off the land of the Alturas Tribe and/or to nonmembers, *see* 15 U.S.C. § 376a(a)(3), namely, the Cigarette and Tobacco Products Tax Law, Cal. Rev. & Tax. Code §§ 30001–30483, the Tobacco Products Licensing Act of 2003, Cal. Bus. & Prof. Code §§ 22970–22991, and the Directory Statute, Cal. Rev. & Tax. Code § 30165.1;

3.    Such other and further equitable relief as required to remedy past unlawful acts and prevent future violations of law as allowable by law;

4.    Civil penalties against Defendants Azuma Corporation and Darren Rose and Phillip Del Rosa in their personal capacities:

1    a.    Pursuant to 15 U.S.C. § 377(b)(1), in the amount of the greater of (a) $5,000

2          for the first violation and $10,000 for each subsequent violation of the PACT

3          Act as alleged in the complaint or (b) two percent of the gross sales of

4          Defendants' cigarettes sales during the one-year period ending on the date of

5          each violation of the PACT Act as alleged in the complaint, in a total

6          amount to be determined by proof;

7    b.    Pursuant to 18 U.S.C. § 2344, in an amount to be determined by proof;

8    c.    Pursuant to California Revenue and Taxation Code section 30165.1(i)(3), in

9          the amount of five times the retail value of the cigarettes distributed that

10         were not included on the California Tobacco Directory; and

11   d.    Pursuant to California Health and Safety Code section 104557(c), in the

12         amount of five percent of the amount improperly withheld from escrow per

13         day of each violation of the Escrow Statute to a maximum of 100 percent of

14         the amount improperly withheld, and in the amount of fifteen percent of the

15         amount improperly withheld from escrow per day of each knowing violation

16         of the Escrow Statute to a maximum of 300 percent of the amount

17         improperly withheld, in a total amount to be determined by proof;

18   5.    Money damages against Defendants Azuma Corporation and Darren Rose and Phillip

19   Del Rosa in their personal capacities:

20   a.    In an amount equal to the State of California's actual damages caused by

21         Defendants' violations of the PACT Act, in an amount to be determined by

22         proof, *see* 15 U.S.C. § 378(c)(1)(A); and

23   b.    In an amount equal to the State of California's actual damages caused by

24         Defendants' violations of the Contraband Cigarette Trafficking Act, in an

25         amount to be determined by proof, *see* 18 U.S.C. § 2346(b)(2);

26   6.    Money damages against Defendants Darren Rose and Phillip Del Rosa in their

27   personal capacities in an amount equal to three times the State of California's actual damages

28   ///

1   caused by Defendants' violation of the RICO Act, 18 U.S.C. § 1962(c), in an amount to be

2   determined by proof, *see* 18 U.S.C. § 1964(c);

3        7.    Costs of investigation, expert witness fees, costs of the action, and reasonable

4   attorneys' fees in amounts to be determined by proof, pursuant to California Revenue and

5   Taxation Code section 30165.1(p); and 18 U.S.C. § 1964(c) from Defendants Azuma Corporation

6   and Darren Rose and Phillip Del Rosa in their personal capacities;

7        8.    That the court retain jurisdiction of this action;

8        9.    That the court order Defendants to disclose any and all information needed to enforce

9   a judgment and/or injunction; and

10       10.   Such other and further relief as the Court deems appropriate and just.

12   Dated:  April 19, 2023               Respectfully submitted,

13

14                                      ROB BONTA
Attorney General of California
JAMES V. HART
Supervising Deputy Attorney General
DAVID C. GOODWIN
Deputy Attorney General

17                              */s/ Peter F. Nascenzi*

19                                      PETER F. NASCENZI
Deputy Attorney General
*Attorneys for Plaintiff State of California*

21   SA2023301988
37091992.docx

COMPLAINT